UNITY MFG. CO. v. INTERNATIONAL
SPOTLIGHT CORPORATION et al.

INTERNATIONAL SPOTLIGHT CORPORA-
TION et al. v. UNITY MFG. CO.

Nos. 4646, 4647.

Circuit Court of Appeals, Seventh Circuit.

Feb. 9, 1932.

Rehearing Denied May 18, 1932.

Russell Wiles, George L. Wilkinson, Marcus A. Hirschl, and George A. Chritton, all of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., of counsel), for Unity Mfg. Co.

Thomas H. Sheridan, of Chicago, Ill., for International Spotlight Corporation and Lorraine Corporation.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

Appeal No. 4646. Two questions are involved on this appeal: (a) The validity and noninfringement of appellant's Ramsey patent and (b) the validity and infringement of claims 5 and 6 of the Cousino patent.

Validity of the Ramsey patent must be determined in the light of a crowded and highly developed prior art which showed many dirigible search lights for marine purposes. These lamps when used on boats were generally located on the top of the pilot house and operated from within. All of the adjustable features of the lamp in suit are disclosed in this prior art. They displayed an adjustability highly perfected. This mechanism which produced such splendid results is so alluring that it is difficult to eliminate the means for securing it as a factor in determining the validity of this patent. But the cold fact remains that the prior art concededly showed dirigible lamps with the means and mechanism whereby this desired result was obtained. Counsel for appellant, with commendable frankness, conceded on oral argument that the sole basis for patentable novelty in the Ramsey patent lay in the specific type devised by him for locating the lamp and the means for its operation by one sitting at a wheel in an automobile. In the face of this concession, which goes no further than the record necessitated, we hardly believe it advisable to here reproduce the drawings or quote from the specifications of this patent to show that in it the inventor disclosed but one distinguishing novelty—the means whereby the lamp was placed laterally to the tube by which it was operated. That is to say, he offset the handle and the lamp. He-

mounted the lamp on one side of. the housing, "i. e., tangent to the tube instead of in line with the tube to get the far simpler and neater arrangement which it provides as compared to the forked bracket commonly employed in a lamp before his time." The difference is well illustrated by an examination of the Hill patent and the Ramsey lamp.

We are not disposed to lightly reject a claim to invention because of the shortness of the step which measures the advance, provided other facts are present to support the inventor's claim to invention. However, it seems to us that in the case at bar Ramsey merely met the problem which confronted one who was required to attach a dirigible lamp formerly used upon a boat to its new use on an automobile. It was the same lamp, and its adjustability was accomplished by the same means as had heretofore been used in the marine service and elsewhere. Ramsey connected the various elements in the old dirigible lamp so that one sitting at an automobile wheel, with limited opportunity to move about, could operate the lamp located outside the car. The offset of a lamp and the elimination of the brackets accomplished this result.

The commercial success asserted by appellant to support its case cannot be accepted at its asserted value. For the tremendous growth in the number of automobiles led to an unprecedented development of accessories in the automobile industry. The changes in the construction of the cars led to the sudden development and to almost as sudden a disappearance of many accessories. Their claim to asserted patentable novelty could not be truly tested by their sudden popularity any more than their disappearance evidenced a lack of merit. In the present case, for example, it is fair to assume that the sudden and tremendous increase in closed cars over open cars accounts for the disappearance of one kind of spotlight lamp and the appearance of the other, although each might have evidenced inventive genius in its making. We have not, however, ignored this evidence of extensive use. Without discussing the Ramsey patent further, we content ourselves with stating our conclusion, to wit: Claims 4 and 7 sued upon are invalid in view of the prior art.

██ Cousino patent, No. 1,327,945. This patent covered a "spotlight mounting device" and was issued January 13, 1920, upon an application filed February 14, 1919. In his application, Cousino said:

"This invention relates to controllable mountings, especially for searchlights or spotlights.

"This invention has utility when incorporated in connection with spotlights for motor vehicles, more particularly for wide range of control from within the car."

He presented "Fig. 1," herewith reproduced, as an illustration of the lamp when applied to an open car. In his specifications, he further says: "For directing the beam of the spotlight upward or downward the hand wheel 24 may be rocked to rock the bracket or housing 15 and with it the second tubular member 14 within its frictional guide 12. This transmits a rocking movement to the outer bracket or housing 16 and thus rocks the spotlight 27."

FIG. I

He also said: [1]
He continues: [2]

---

[1] "Fixed with the bracket 15 is a tubular stem 22 for the actuator stem 23 carrying the handle 24. The stem 23 is fast with the pinion 17 for rotating such pinion from the handle 24. This stem 23 has bearings in the bracket or housing 15, as does stem 25 have bearings in the bracket or housing 16. This stem 25 is mounted in position to carry the pinion 18 by a nut 26. This stem 25 carries the spotlight 27. This spotlight 27 may be rotated for full 360° movement with the stem 25 by rotating the pinion 18 as effected by rotating the hand wheel 24 within the car."

[2] "When used in connection with closed cars, a flange 28 is mounted fast with the outer fixed guide or tubular member 12. To provide for the frictional holding of the second tubular member 14, in the tubular member 12, there is the split clamp ring 29 having the gripping bolt 30 as shown in Fig. 2.

"This device of the invention herein provides a mounting of universal direction or range applications which may be used with a standard or usual type of spotlight. The position of the handle 24 is convenient to the position of the steering wheel so that the driver of the vehicle may readily manipulate the spotlight to any position desired. This is exceptionally advantageous when the car is closed, for without taking attention from the steering of the vehicle, as in turning the dark corners at night, before the turning is effected from the steering wheel, the driver may shift, by rotating the handle 24, the spotlight 27 so that the direction of the desired driving is made clear to the driver. This may not only mean to find the direction but also the elevation or downward deflection may readily be had by additionally rocking the handle 24. Furthermore, this spotlight may be so shifted to give a clear light for backing, for it may be turned to give a

The two claims read as follows:

"5. A windshield, a spotlight mounting device including a guide sleeve, a friction clamp anchored adjacent said windshield and embracing said sleeve, a spotlight carrying bracket at one side of said clamp, and a handle extending rearwardly from the sleeve at the other side of the clamp, said handle being movable to rotate said sleeve as to the clamp to rock the spotlight bracket, and said handle being rotatable to oscillate the spotlight bracket on an axis intersecting the axis of the sleeve.

"6. A windshield frame, a spotlight mounting device mounted on said frame and including a guide projecting laterally therefrom, a spotlight carrying bracket on the outer end of said guide, and a handle transversely extending rearwardly on the inner end of said guide, said handle connected through the guide to rock the spotlight bracket on said guide as a horizontal axis, and said handle rotatable to oscillate the spotlight bracket on an axis intersecting the axis of the guide."

It will be noted that claim 5 does not call for a *windshield frame*. Claim 6 refers to the *frame* and therefore is suggestive at least of a mounting device for use on closed cars.

In addition to the prior art which was referred to when discussing the Ramsey patent, Cousino was confronted, when he applied for his patent, with the said Ramsey patent and also the Rice patent. The latter was issued September 25, 1917, and covered an "adjustable lamp holder." In his specifications, Rice said: [3]

An examination of the exhibits which illustrate the Rice lamp, as well as the Ramsey lamp, is persuasive that the undeveloped field left to Cousino was extremely small. It was necessarily limited largely to the adoption of differences in length of parts and in size, form, and location of the handle or handles which the operator grasped to adjust the

lamp. The necessity of having a handle readily accessible to the driver and operative by one engaged in two occupations—holding the wheel while manipulating the lamp—was obvious, and it was also pointed out in the specifications and drawings of the aforesaid patents. The securing of the lamp to the windshield frame, the length of the tube extending from the handle to the lamp, and the means whereby the handle was operated—all presented matters of choice of means for the mechanic rather than an original combination of elements which evidenced invention.

Taking claim 6 specifically, we find that Rice made use of a windshield. Cousino does not describe any particular form of spotlight mounting device to be attached to the frame. Rice and Ramsey both had their mounting device include a guide projecting laterally therefrom, a spotlight carrying bracket on the outer end of said guide, and a handle transversely extending rearwardly on the inner end of said guide, said handle connected through the guide to rock the spotlight bracket on said guide as a horizontal axis, and said handle rotatable to oscillate the spotlight bracket on an axis intersecting the axis of the guide. In view of Ramsey and Rice, we conclude that claim 6 was anticipated, and, if not fully anticipated, they clearly pointed the way. The Cousino combination described in claim 6, therefore, did not spell patentable novelty.

Claim 5, however, while not specifically limited to use on a closed car, contained an element—"a friction clamp anchored adjacent said windshield and embracing said sleeve"—which is not found in claim 6.

Unity asserts that its patent does not infringe this claim because of the absence of any friction clamp so anchored. We are inclined to think that its device is the equivalent of this friction clamp, but on the other hand the adoption of such a friction clamp was so obvious a necessity and so simple a means as to necessitate its being called a mechanic's adoption of a well-known method to

viewpoint in the rear of the vehicle and further may be deflected to even direct its light within the vehicle."

[3] "The operation of the apparatus is as follows: The lamp casing may be tilted so as to throw the lights up or down by merely tilting the handle-lever vertically upon the fulcrum pivot 16, when the pitman 21, acting upon the crank-arm 19, will cause the casing or rocking member, to be tilted upon a horizontal axis, thereby carrying with it the normally vertical lamp support 25. A lateral movement of the lever in turn serves to actuate the crank-arm 9 which, through the pitman 23 and crank-arm 27, results in moving the lamp upon said normally vertical axis to throw the light rays laterally in either direction. These movements may be varied indefinitely so as to impart a sufficiently universal movement to the lamp to meet all requirements of the user.

"If used upon an automobile at night, the operator may so manipulate the lamp 30 as to light the road while turning curves, ascending or descending hills, for reading signs, or for any similar purpose; while, by closing the switch 39, the light 31 may be directed toward the rear as a warning or to enable the driver to see what is behind. The advantage of being able to throw either light on or off and to direct them whenever desired by means of a single operating handle, is too obvious to require special comment. * * *

"The operating handle is intended to be located near the steering wheel of an automobile and within the curtained inclosure, or that of an armoured vehicle, so as to be readily accessible under all conditions. * * *"

948

secure the desired result rather than an inventor's conception.

Differences between the Rice lamp and the Cousino lamp are due largely to their use on different kinds of automobiles. When the Cousino lamp was placed on the market, most cars were closed. When the Rice lamp was patented, open cars were made almost exclusively. This difference accounts for the size of the tube leading from the lamp to the handle in the Cousino lamp. Obviously, this was a matter of choice on the part of the mechanic. For if a tube is to pass through a small frame like a windshield frame it must be small. Its size plays no part in its function. Moreover, neither claim mentions the size of the tube which passes through the windshield frame.

Nor can we attribute invention to the difference between the adjusting means—one called rocking and the other a rotating movement of the pitman rod. In view of the prior art and in view of the well known and commonly adopted means of securing either movement, a mechanic was free to choose either.

What has been said about extensive use applies to the Cousino patent as well as to the Ramsey patent. The change from open to closed cars made it necessary for the manufacturer to provide lamps with rods which passed through the windshield frame. The enormous increase in the number of such cars, coupled with the fact that the Lorraine lamp was well made and well served its purpose and satisfied the customers, accounted for its large sales rather than any unusual novelty in its structure. We conclude that claims 5 and 6 of the Cousino patent, No. 1,327,945, are invalid.

Appeal No. 4647. Respecting the four patents involved on this appeal which the District Court held invalid, nothing need be said. Judge Lindley's memorandum covers each of them, and we approve of his conclusions and his reasoning.

The appeal in No. 4647 is affirmed.

The appeal in No. 4646 is affirmed so far as the decree of the District Court relates to patents owned by Unity Manufacturing Company upon which it brought suit. The decree in favor of International Spotlight Corporation and the Lorraine Corporation sustaining the Cousino patent No. 1,327,945 is reversed, with directions to enter a decree in accordance with the views expressed in this opinion.

The costs of the two appeals shall be equally divided between the parties.